STATE OF MAINE                                    SUPERIOR COURT
AROOSTOOK, ss.                                    CIVIL ACTION
                                                  DOCKET NO. CV-20-75


TOWN OF MADAWASKA,

              Plaintiff

        v.                                ORDER ON DEFENDANT'S MOTION
                                          TO DISMISS
TWIN RIVERS PAPER COMPANY,
LLC,

              Defendant

Before the court is Defendant Twin Rivers Paper Company, LLC's, ("TRPC") motion to

dismiss the Town of Madawaska's ("Town") complaint. For the purposes of this motion, all facts

alleged in the Town's complaint are assumed to be true.

Background

The parties are a municipality and a Delware limited liability company that operates a

paper mill in the Town. (Compl. ¶¶ 1-2.) Following a dispute over the property taxes owed for

tax years 2011 and 2012, the parties entered into a Term Sheet agreement in December 2013.

(Pl.'s Ex. A 1, Compl. ¶ 6.) This Term Sheet provided an "Assessed Valuation Basis" for tax

years 2011 through 2016. (Pl.'s Ex. A 1.) The Term Sheet also stipulates that the parties shall

negotiate a property tax assessment base for future years. *Id.* at 2. Should the parties fail to reach

an agreement, the Term Sheet provides that the parties would split the cost of hiring a third-party

firm, selected by Pierce Atwood LLC, to step in to perform the valuation, subject to a floor of

$65 million and a ceiling of $105 million. *Id.* This valuation was to serve as the basis for tax

years 2017 and 2018. The agreement also provides that the assessment base "shall be adjusted on

a go-forward basis to reflect property additions and deletions." *Id.*

1

The Term Sheet was followed by the parties through tax year 2016. (Compl. ¶¶ 17-18.) The parties met to negotiate a valuation for the property for tax years following 2016, but were unable to reach an agreement. (Compl. ¶¶ 19-20.) On August 22, 2017, the Town Manager sent a letter to TRPC informing it that the Town had decided to hire its own appraiser and would not require TRPC to pay any of the cost. (Compl. ¶ 22.) This appraisal would only go into effect for tax year 2018. (Compl. ¶ 23.)

Pierce Atwood, now representing TRPC, informed the Town that it had engaged its own firm to perform a valuation on October 27, 2017. (Compl. ¶ 24.) The Town valued TRPC's property at $173,069,868 for the 2018 tax year, based on the valuation determined by the firm it hired. (Compl. ¶¶ 28-29.) TRPC's appraiser arrived at a valuation of $84 million. (Compl. ¶ 32.) TRPC then filed a lawsuit alleging that the Town's tax assessment violated the agreement in the Term Sheet. (Compl. ¶ 33.) The matter was submitted to arbitration, which resulted in a judgement for TRPC. (Compl. ¶¶ 34-36.) The judgment of the arbitrator, subsequently confirmed by a superior court, was that TRPC's appraisal would be used to set the valuation of the property after certain adjustments. (Pl.'s Ex. B.)

On May 11, 2020, the Town sent a letter to TRPC stating that it believed that the Term Sheet had expired because it made no provision for tax years after 2018. (Compl. ¶ 39.) On May 14, 2020, TRPC replied that it believed the language "[t]he property tax assessment base shall be adjusted on a go-forward basis to reflect property additions and deletions" made the agreement still binding on the parties. (Pl.'s Ex. D.)

On July 10, 2020, the Town filed this action seeking a declaration of its rights and obligations under the Term Sheet pursuant to Declaratory Judgments Act. 14 M.R.S. §§ 5951-

2

5963 (2020). TRPC filed its motion to dismiss on August 5, 2020. The Town filed its opposition to the motion on August 25, 2020.

Standard

When ruling on a motion to dismiss for failure to state a claim pursuant to M.R. Civ. P. 12(b)(6), the court views the "facts alleged in the complaint as if they were admitted." *Nadeau v. Frydrych*, 2014 ME 154, ¶ 5, 108 A.3d 1254 (*per curiam*) (quotation marks omitted). A complaint must set forth the "elements of a cause of action or allege[] facts that would entitle the plaintiff to relief pursuant to some legal theory." *Id.* Facts are read in the light most favorable to the plaintiff. *Id.* "Dismissal is warranted only when it appears beyond a doubt that the plaintiff is not entitled to relief under any set of facts that might be proved in support of the claim." *Halco v. Davey*, 2007 ME 48, ¶ 6, 919 A.2d 626 (quotation marks omitted). On the other hand, "a party may not . . . proceed on a cause of action if that party's complaint has failed to allege facts that, if proved, would satisfy the elements of the cause of action." *Burns v. Architectural Doors and Windows*, 2011 ME 61, ¶ 17, 19 A.3d 823.

Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." M.R. Civ. P. 8(a). "Notice pleading requirements are forgiving; the plaintiff need only give fair notice of the cause of action by providing a short and plain statement of the claim showing that the pleader is entitled to relief." *Desjardins v. Reynolds*, 2017 ME 99, ¶ 17, 162 A.3d 228 (quotation marks omitted).

3

Res Judicata

TRPC argues that the Town's claims must be dismissed because they have already been litigated to a final judgment and therefore are precluded by *res judicata*. They argue that the Arbitrator in their previous dispute ruled on the enforceability of the Agreement for tax years after 2016 and that this bars the Town from raising any claim that the Agreement is no longer in effect based on the doctrine of collateral estoppel. (Mot. Dismiss 5-10.) In the alternative, TRPC argues that the Town's current claims were compulsory counterclaims in their previous dispute and are thus precluded by the Town's failure to raise them in those proceedings based on the claim preclusion doctrine. (Mot. Dismiss 14-16.)

Collateral Estoppel

Collateral estoppel "is the fact-focused branch of res judicata that prevents the relitigation of issues already decided if the identical issue was determined by a prior final judgement, and the party estopped had a fair opportunity and incentive to litigate the issue in a prior proceeding." *Berry v. Mainstream Fin.*, 2019 ME 27, ¶ 8, 202 A.3d 1195 (quotation omitted).

TRPC's argument fails on the first prong of this analysis. Contrary to TRPC's arguments, the Town is not asserting that the Agreement is invalid for any tax year after 2016. The Town explicitly acknowledges the existence of terms pertaining to the 2017 and 2018 tax years. (Compl. ¶ 9-11.) What the Town is actually alleging is that the Agreement has no provision that pertains to tax years after 2018. Thus, the Town's arguments pertain to the construction and enforceability of this Agreement for tax years after 2018, not in general.

TRPC argues that the Arbitrator did not limit his findings to a particular tax year and that this makes the reasoning in his decision binding on all subsequent tax years. This court fails to

4

see how the Arbitrator's finding that the Agreement was valid and binding on the parties regarding valuation for the 2018 tax year constitutes a final adjudication of the construction of other contract language for every tax year to follow. The Arbitrator explicitly states that the issue before him is the valuation for the 2018 tax year. (Arbitrator's Decision 1.) Nothing in his rationale requires a finding that the language at issue created a binding scheme for the valuation of the property in perpetuity or for subsequent years.

There was no final adjudication of the issues before the court. As such, the Town's claims are not barred by collateral estoppel.

Claim Preclusion

"Claim preclusion forecloses relitigation of claims only when '(1) the same parties or their privies are involved in both actions; (2) a valid final judgment was entered in the prior action; and (3) the matters presented for decision in the second action were, or might have been, litigated in the second action." *Berry*, 2019 ME ¶ 8, 202 A.3d 1195 (quotation omitted). The third prong is subject to a transactional test, where the court "examines the aggregate of connected operative facts that can be handled together conveniently for purposes of trial to determine if they were founded upon the same transaction, arose out of the same nucleus of operative facts, and sought redress for essentially the same basic wrong." *Pushard v. Bank of America*, 2017 ME 230 ¶ 21, 175 A.3d 103 (quotation omitted).

Failure to assert a compulsory counterclaim required by M.R. Civ. P. 13(a) has the same claim preclusive effect as if the claim was litigated and lost. *Keybank Nat'l Ass'n v. Sargent*, 2000 ME 153, ¶ 17, 758 A.2d 528. M.R. Civ. P 13(a) provides:

> a pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim, and does not require

5

for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

TRCP argues that the Town was compelled to assert all counterclaims "relating to the Agreement's continuing validity in years after 2016." (Mot. Dismiss 16.) In other words, the Town would have to anticipate all future disputes regarding the construction of the Agreement and seek declaratory judgement on them during a dispute concerning the valuation of the property in a particular year. Leaving aside the matter of whether those anticipated claims would even be ripe, this court applies a transactional test which plainly contradicts this interpretation of the law.

Parties are not required to assert every claim on a contract to avoid having their claims barred during future disputes. What matters is that they assert counterclaims that arise out of the same transaction that the claims at issue arose from. For instance, a party's claim is not precluded by a prior breach of contract lawsuit when the second lawsuit arose out of entirely different conduct and breached a different term. *Wilmington Tr. Co. v. Sullivan-Thorne*, 2013 ME 94, ¶ 12, 81 A.3d 371.

The two relevant proceedings here concern entirely different transactions. In the prior arbitration, the "basic wrong" being addressed was the Town's decision to hire its own appraiser for the 2018 tax year, and the arbitrator ultimately made findings pertinent to the 2018 tax year. The dispute currently before the court concerns whether any of the terms of the Agreement are binding on years after the 2018 tax year, as TRPC contends that the language of the Agreement binds the Town to only change the property tax valuation on the basis of property additions and deletions. Clearly these are entirely different transactions, based on different operative facts and addressing different wrongs.

6

This court thus finds that the Town's complaint is not barred by either component of the *res judicata* doctrine.

Ripeness

TRPC also argues that the Town's claims are not yet ripe for judicial determination. The Declaratory Judgement Act may only be invoked when there is a genuine controversy. *Patrons Oxford Mut. Ins. Co. v. Garcia*, 1998 ME 38, ¶ 4, 707 A.2d 384. "A genuine controversy exists if a case is ripe for judicial decision and action." *Id.* "Ripeness is a two prong analysis: 1) the issues must be fit for judicial review, and (2) hardship to the parties will result if the court withholds review." *Blanchard v. Town of Bar Harbor*, 2019 ME 168, ¶ 20, 221 A.3d 554.

On the first prong, the issues before the court are plainly fit for review. While TRPC argues that it will not be clear if the Town's rights are actually affected until it values the property and issues a tax bill. This argument is unpersuasive. The issue before the court is not one of a purely speculative nature, there is a clear controversy that the Town seeks a declaratory judgement to resolve. Specifically, the Town wishes to value the property and TRPC asserts that it is bound by the Agreement to only change the valuation based on addition or deletion of property. This is an imminent dispute with clear legal issues to resolve.

The Town would clearly face hardship if judicial review was withheld in this case. TRPC argues that no hardship would result to the Town if it had to issue a tax bill and wait to see if TRPC would challenge it. This ignores the costs that the Town would have to incur to have the property revalued. If it turns out that TRPC was correct and the Town cannot revalue the property then that money would have been wasted. Forcing the Town to wait until those costs

7

have already been expended before it can receive judicial review of its rights under the agreement would therefore result in hardship.

This case satisfies both prongs of the ripeness analysis, and is therefore ripe for judicial review. Accordingly, TRPC's motion to dismiss fails on this ground.

The entry is

> Defendant Twin Rivers Paper Company, LLC's Motion to Dismiss is DENIED.
>
> The Clerk is directed to enter this order into the docket by reference pursuant to M.R.Civ.P. 79(a).

Date: 9/22 , 2020

Harold Stewart, II
Justice, Superior Court