**HAYDEN BROOK LOGGING, INC.**

v.

**STATE of Maine.**

Supreme Judicial Court of Maine.

Argued April 25, 1990.
Decided May 3, 1990.

Peter Bennett (orally), Herbert H. Bennett and Associates, P.A., Portland, for plaintiff.

---

**302**

Paul Stern (orally), Asst. Atty. Gen., Augusta, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD, HORNBY and COLLINS, JJ.

HORNBY, Justice.

Hayden Brook Logging, Inc., an employer, brought this declaratory judgment action against the State to establish that federal labor law preempts a state statute regulating the hiring of replacement workers during a strike. The statute, 26 M.R.S.A. § 595 (1988), provides that an employer may not engage in specified hiring activities at any of its sites where a labor dispute, strike or walkout is occurring, that an employer must find a separate location at which to engage in these hiring activities and that an employer must notify the county and municipal law enforcement agencies of this new location at least ten days before it begins hiring activities.[1] On the employer's motion for summary judgment, the Superior Court (Kennebec County, *Brody, C.J.*) ruled that the National Labor Relations Act, 29 U.S.C. § 151–68 (1973), preempts the Maine statute. We conclude that this case does not present a justiciable issue. We therefore vacate the judgment of the Superior Court and, without reaching the merits, remand with instructions to dismiss the action.

Hayden Brook's employees notified the company that they were going to strike. Hayden Brook wanted to hire replacement workers. According to the evidence submitted on the motion, the company had planned to hire replacement workers by telephone. On advice of counsel, the company concluded that the Maine statute required it to notify the relevant county and town law enforcement agencies ten days before it began hiring. It contacted law enforcement authorities but, before the ten days elapsed, the strikers returned to work. Hayden Brook filed this declaratory judgment action after the work stoppage had ended. Thus, the company no longer wants to hire replacement workers. Although the company claims to have lost revenues during the period when it did not hire replacement workers, Hayden Brook is not seeking damages.

Hayden Brook's only claim is that the Maine statute is preempted by federal labor law and is unconstitutional. It is not clear to us, however, that the statute even applies to the hiring attempt in question here. Hiring by telephone is not clearly covered by the statute. The statute prohibits an employer from

---

1. **3. Receiving job applicants at worksite prohibited.** No employer may perform any of the following acts at any of that employer's plants, facilities, places of business or worksites where a labor dispute, strike or lockout involving the employees of that employer is in progress:

   **A.** Receiving persons for the purpose of soliciting or receiving applications for employment with the employer;

   **B.** Conducting or having conducted interviews of applicants for employment with the employer; or

   **C.** Performing or having performed medical examinations of applicants for employment with the employer.

   Any employer who violates this subsection is subject to a civil penalty not to exceed $10,000 for each day the violation continues, payable to the State, to be recovered in a civil action. Upon request, any court of competent jurisdiction shall also enjoin the violation under section 5.

   The Attorney General, the Commissioner of Labor or any employee, employees or bargaining agent of employees involved in the labor dispute may file a civil action to enforce this subsection.

   **4. Hiring off-site permitted.** An employer involved in a labor dispute, strike or lockout may perform hiring activities prohibited under subsection 3 at any site other than his customary plants, facilities, places of business or worksites where a labor dispute, strike or lockout involving the employees of that employer is in progress.

   **A.** The employer must notify the law enforcement agencies of the county and municipality in which these activities will be conducted at least 10 days before commencing hiring activities.

   **B.** No employee of the employer conducting hiring activities under this subsection and who is involved in the labor dispute, strike or lockout may picket, congregate or in any way protest the hiring activity of the employer within 200 feet of the building or structure at which such activities are taking place. Violation of this paragraph is a Class E crime.

   26 M.R.S.A. § 595(3) & (4) (1988).

A. [r]eceiving persons for the purpose of soliciting or receiving applications for employment with the employer;

B. [c]onducting or having conducted interviews of applicants for employment with the employer....

at any of that employer's places of business where a labor dispute involving the employees of that employer is in progress. *See* 26 M.R.S.A. § 595(3) (1988). Certainly voice communication by telephone is not "receiving persons" at the site. Although one can "conduct[ ] interviews" by telephone, there is no suggestion on this record that a labor dispute was occurring at any place where this employer would have made its telephone calls.[2] Indeed, it seems unlikely that the Legislature intended to forbid telephone hiring even in an employer's primary operating plants. After all, telephone calls made from inside an office in the plant do not present any of the confrontational difficulties of applicants visiting a strike-bound plant to file their applications, be interviewed, or have medical examinations performed.[3] In this particular case, the workers are timber harvesters and conduct their activities out in the woods, where the employer has a camp for their living accommodations and sites where they work. According to the testimony of Hayden Brook's general manager, he would have hired replacement workers simply by phoning people whom he knew, then, after they were hired, picking them and their equipment up and delivering them to the worksite. That kind of hiring activity simply does not appear to fit within the language of the statute. Moreover, it does not fit within the legislative findings with which the statute begins, namely, that:

the practice of *receiving applicants* for employment, conducting interviews of

job applicants or performing medical examinations of job applicants *at the worksite* of an employer who is currently engaged in a labor dispute with his employees tends to incite violence *by bringing individuals who may be considered as replacements for workers to the physical focus of the labor dispute* and by encouraging a direct confrontation between these individuals and the prior employees....

26 M.R.S.A. § 595(1)(A) (1988) (emphasis supplied). Here, the replacement workers would have arrived at the worksite only after they had been hired. The statute, however, is concerned with applicants, not those who have already been hired.

Finally, we observe that an important part of the employer's complaint in this case is the ten-day waiting period between notifying law enforcement agencies and beginning off-site hiring. Even assuming that the employer's telephone hiring is prohibited by subsection 3, and that the employer must therefore proceed with the ten-day notification to law enforcement authorities under subsection 4, paragraph A, there is no apparent penalty for violating this paragraph.[4] *See* 26 M.R.S.A. §§ 595(3) & (4 A) (1988). If we assume that the criminal penalty provided for violation of subsection 4, paragraph B, also applies to paragraph A, we are left with the fact that there is no suggestion on this record that any prosecution is or would be contemplated for telephone hiring.

Because the application and effect of the statute are so uncertain in this factual context as to both this employer and future disputes, we conclude that this controversy does not provide us an appropriate instance in which to rule upon the important question whether federal labor law preempts

---

**2.** Hayden Brook's office was located in the basement of the general manager's home in Fort Kent.

**3.** A further difficulty in sensibly applying the statute to telephone hiring is determining which county and municipal law enforcement authorities would be notified. Would it be the authorities for the location from which the employer makes the phone calls, or would it be authorities for all the locations where the various po-

tential employees are located? Neither choice has any obvious nexus to law enforcement concerns, unlike in-person on-site interviews.

**4.** A civil penalty is imposed for violating subsection 3 and a criminal penalty is imposed for violating subsection 4, paragraph B, a picketing prohibition. *See* 26 M.R.S.A. §§ (3) & (4) (1988).

the Maine statute. "A justiciable controversy is a claim of present and fixed rights, as opposed to hypothetical or future rights...." *Connors v. International Harvester Credit Corp.*, 447 A.2d 822, 824 (Me.1982); *see also Maine Auto. Dealers Ass'n v. Tierney*, 425 A.2d 187, 189 (Me. 1981); *Bancroft & Martin, Inc. v. Local No. 340, Truck Drivers, Warehousemen & Helpers Union*, 412 A.2d 1216, 1217 (Me. 1980).

The entry is:

Judgment vacated and remanded with instructions to dismiss the complaint as nonjusticiable.

All concurring.