2003 ME 59

## TEN VOTERS OF the CITY OF BIDDEFORD

v.

## The CITY OF BIDDEFORD et al.

Supreme Judicial Court of Maine.

Argued: Feb. 12, 2003.
Decided: April 25, 2003.

David A. Lourie (orally), Cape Elizabeth, for plaintiffs.

Harry B. Center II (orally), Aaron ·P. Burns, Smith Elliott Smith & Garmey, P.A., Saco, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

DANA, J.

[¶ 1] The Ten Voters of the City of Biddeford (the Voters) appeal from a judgment entered in the Superior Court (York County, *Fritzsche J.*), dismissing their request for declaratory relief as moot and subsequently denying their Rule 59[1] motion to alter or amend the judgment because they had failed to include a Rule 7(b)(1)(A)[2] notice with their motion. The Voters contend the action should not have been dismissed because the controversy retained sufficient practical consequences or, in the alternative, because this case qualifies for one of the exceptions to the mootness doctrine. We disagree and affirm the judgment of the Superior Court.

## I. BACKGROUND

[¶ 2] On May 31, 2002 five voters of the City of Biddeford requested petitions from the city clerk so that they could initiate a charter amendment. In response to their request, the clerk indicated that their efforts might not be successful because of her belief that the Biddeford City Charter allows only for amendments proposed by a charter commission.[3] Convinced they had been improperly denied the petitions, the five voters enlisted other Biddeford voters and initiated a lawsuit pursuant to 30–A M.R.S.A § 2108 (1996)[4] seeking both in-

---

1. M.R. Civ. P. 59(e) provides:

 A motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment. A motion for reconsideration of the judgment shall be treated as a motion to alter or amend the judgment.

2. M.R. Civ. P. 7(b)(1)(A) provides in pertinent part:

 Any motion except a motion that may be heard ex parte shall include a notice that matter in opposition to the motion pursuant to subdivision (c) of this rule must be filed not later than 21 days after the filing of the motion . . . .

3. Article X, Section 6, titled "Revision of Charter," of the Biddeford City Charter reads in pertinent part:

 The Charter may be changed in matters of form and substance only by a duly elected charter commission consisting of . . . who shall serve in accordance with 30–A M.R.S.A. §§ 2101–2106, as amended.

4. Section 2108 provides in pertinent part:

 **1. Petition.** The Superior Court, upon petition of 10 voters of the municipality or on petition of the Attorney General, may enforce this chapter. The charter commission may intervene as a party in any such proceeding.

 **2. Declaratory Judgment.** A petition for declaratory relief under Title 14, chapter 707, may be brought on behalf of the public by the Attorney General or, by leave of the court, by 10 voters of the municipality. The charter commission shall be served with notice of the petition for declaratory judgment.

 **A.** If 10 voters petition for declaratory relief, they shall serve the Attorney General and the charter commission with notice of the preliminary petition for leave.
 . . . .

junctive and declaratory relief. During a conference with the court and counsel, the City indicated that the petitions would be provided to the Voters and soon were.

[¶ 3] After the petitions were issued, the City, contending the Voters now lacked standing and the case was moot, moved to dismiss the case. The Superior Court concluded that the Voters did have standing, but nevertheless dismissed their claims as moot because "[i]t is expected that the City will not improperly enforce Section 6 and will, in proper course, amend it" and because none of the exceptions to the mootness doctrine apply.

[¶ 4] Following the ruling, the Voters filed a motion for findings of fact and to alter judgment pursuant to M.R. Civ. P. 52 and 59(e). The court denied this motion because the Voters failed to include the notice required by M.R. Civ. P. 7(b)(1)(A). The Voters filed a motion to reconsider, but took this appeal before the court could issue its ruling.

## II. DISCUSSION

 [¶ 5] We review a determination of mootness by examining the record to determine "whether there remain sufficient practical effects flowing from the resolution of [the] litigation to justify the application of limited judicial resources." *Lewiston Daily Sun v. Sch. Admin. Dist. No. 43*, 1999 ME 143, ¶ 14, 738 A.2d 1239, 1243 (quoting *State v. Irish*, 551 A.2d 860, 861–62 (Me.1988)) (internal quotation marks omitted). Mootness " 'is the doctrine of standing set in a time frame: The requisite personal interest that [existed] at the commencement of litigation (standing) must continue throughout its existence (mootness).' " *Halfway House, Inc. v. City of Portland*, 670 A.2d 1377, 1379 (Me. 1996) (quoting Henry P. Monaghan, *Constitutional Adjudication: The Who and When*, 82 Yale L. Rev. 1363, 1384 (1971)). The Voters suggest that 30–A M.R.S.A § 2108 gives them continuous statutory standing to challenge charter provisions despite the absence of any particularized injury or actual controversy. We disagree.

[¶ 6] At the outset, it is important to distinguish the initial five voters from the ten who filed the action. The five voters suffered harm; they were denied petitions contrary to state law. We do not question the five voters' ability to challenge the clerk's failure to issue the petitions on their own initiative. However, once the petitions were issued their claim became moot. *See Int'l Paper Co. v. United Paperworkers Int'l Union*, 551 A.2d 1356, 1360–61 (Me.1988) ("A dispute loses its controversial vitality when a decision by this court would not provide an appellant any real or effective relief."). A claim filed by ten voters pursuant to section 2108 does not circumvent the practical application of the mootness doctrine. Section 2108 provides a means for any ten voters to challenge an ordinance adopted by a charter commission in the absence of injury only when it is brought within thirty days of its enactment. 30–A M.R.S.A. § 2108. It does not provide ten voters independent standing to bring an action to challenge the provision thereafter.

**3. Judicial Review.** Any 10 voters of the municipality, by petition, may obtain judicial review to determine the validity of the procedures under which a charter was adopted, revised, modified or amended. The petition must be brought within 30 days after the election at which the charter, revision, modification or amendment is approved. If no such petition is filed within this period, compliance with all the procedures required by this chapter and the validity of the manner in which the charter adoption, revision modification or amendment was approved is conclusively presumed.

30–A M.R.S.A. § 2108 (1996).

▪ [¶ 7] The Declaratory Judgments Act, 14 M.R.S.A. §§ 5951–5963 (2003), also does not authorize their claim in the absence of injury. We have consistently held that the Act may only be invoked when there is a genuine controversy. *Lewiston Daily Sun,* 1999 ME 143, ¶ 20, 738 A.2d at 1244. Once the City issued the petitions, the controversy that had existed ended and the Voters' claim evaporated. The mere possibility that other City of Biddeford voters sometime in the future may be discouraged by the existence of the provision is not enough to warrant judicial intervention. *See Me. Civil Liberties Union v. City of S. Portland,* 1999 ME 121, ¶ 8, 734 A.2d 191, 194 (defining a justiciable controversy as "a claim of present and fixed rights, as opposed to hypothetical or future rights, asserted by one party against another who has an interest in contesting the claim" (quoting *Connors v. Int'l Harvester Credit Corp.,* 447 A.2d 822, 824 (Me.1982)) (internal quotation marks omitted)); *see also Hayden Brook Logging, Inc. v. State,* 574 A.2d 301, 303–04 (Me.1990) (refusing to rule on the validity of a statute where its application and effect were uncertain).

▪ [¶ 8] There are, however, three narrow exceptions that may justify addressing a case on the merits that is otherwise moot:

First, the court will determine whether sufficient collateral consequences will result from determination of the questions presented so as to justify relief. Second, while technically moot in the immediate context, questions of great public interest may nevertheless be addressed for the future guidance of the bar and the public. Third, issues which may be repeatedly presented to the trial court, yet escape review at the appellate level because of their fleeting or determinate nature may appropriately be decided.

*Lewis v. State,* 2000 ME 44, ¶ 4, 747 A.2d 1191, 1192 (quoting *State v. Gleason,* 404 A.2d 573, 578 (Me.1979)). The Voters specifically contend that the circumstances before us fall within the last two exceptions. We disagree.

▪ [¶ 9] To determine whether a case falls within the "great public interest" exception the following criteria are considered: "whether the question is public or private, how much court officials need an authoritative determination for future rulings, and how likely the question is to recur in the future." *Young v. Young,* 2002 ME 167, ¶ 9, 810 A.2d 418, 422 (citing *King Res. Co. v. Envtl. Improvement Comm'n,* 270 A.2d 863, 870 (Me.1970)). Although the question is public in nature, there is no indication that the issue will recur in the future or that there is a need for an authoritative determination. *See id.* The City asserts that to its knowledge the provision, which has been in existence for years, has never been challenged before and that petitions would be issued if requested. Furthermore, the Superior Court made clear that the provision, if enforced, would violate state law. The question does not qualify for the "great public interest" exception. *See King Res. Co. v. Envtl. Improvement Comm'n,* 270 A.2d 863, 870 (Me.1970).

▪ [¶ 10] To fall within the third exception to mootness there must be a "reasonable likelihood that the same issues will imminently and repeatedly recur in future similar contexts," yet escape review because of their "fleeting or determinate nature." *Good Will Home Ass'n v. Erwin,* 285 A.2d 374, 380 (Me.1971); *Gleason,* 404 A.2d at 578. A pregnant woman seeking to challenge abortion laws, whose pregnancy ends during the litigation, falls within this exception because a nine-month gestation period is fleeting and determinate, when compared to the appellate process.

*See Roe v. Wade,* 410 U.S. 113, 125, 93 S.Ct. 705, 713, 35 L.Ed.2d 147 (1973). This case does not present similar concerns. The City has stated that it will issue the petitions if asked. It is unlikely, therefore, that this issue will arise again in this context and evade review. *See Monroe v. Town of Gray,* 1999 ME 190, ¶ 6, 743 A.2d 1257, 1259.

■ [¶ 11] The Voters also contend that the court erred in its denial of their Rule 59 motion because they had failed to include a Rule 7(b)(1) notice. They argue that a Rule 7(b)(1) notice is not required for post-judgment motions and if it is, denial of the motion is too harsh a sanction. These contentions are without merit. Although the Rule and our advisory committee notes do state that the court may decide Rule 59 motions without a hearing and before opposition is filed, neither the Rule nor the notes can be read to relieve a party of the notice requirement altogether. The advisory committee notes indicate that the Rule is intended merely to give the court more leeway when responding to motions that are usually brought to relitigate issues fully presented and recently decided. *See* M.R. Civ. P. 7(b)(5) & 59(e) advisory committee's note to 2000 amends., Me. Rptr., 746–754 A.2d XVIII, XXXVI. We review the denial of motions for findings of fact and to amend or alter the judgment for an abuse of discretion. *See Madore v. Me. Land Use Regulation Comm'n,* 1998 ME 178, ¶ 15, 715 A.2d 157, 161. There is no evidence in the record that the court acted beyond its discretion here. *See id.*

The entry is:

Judgment affirmed.